UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.L.,<br><br>    Plaintiff,<br><br> v.<br><br>ANDREW SAUL,<br><br>    Defendant. | Case No. 19-cv-01998-JCS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS**<br><br>Re: Dkt. Nos. 16, 23 |

## I. INTRODUCTION

Plaintiff C.L.[1] applied for supplemental security income ("SSI") under Title XVI of the Social Security Act, alleging disability beginning August 12, 2015 due to Stage III colon cancer and a heart condition. After his claim was denied initially and upon reconsideration, an administrative law judge ("ALJ") held a hearing on December 19, 2017. Plaintiff was not represented by counsel at the hearing. On March 29, 2018, the ALJ denied Plaintiff's application and on February 8, 2019, the Appeals Council denied Plaintiff's appeal of the ALJ's decision, making it the final decision of Defendant Andrew Saul, Commissioner of the Social Security Administration ("Commissioner"). For the reasons stated below, the Court GRANTS Plaintiff's Motion for Summary Judgment, DENIES the Commissioner's Motion for Summary Judgment, REVERSES the decision of the Commissioner, and REMANDS the case to the Social Security Administration for further proceedings.[2]

---

[1] Because opinions by the Court are more widely available than other filings and this Order contains potentially sensitive medical information, this Order refers to Plaintiff using only his initials.

[2] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Factual Background

#### 1. Education and Employment

Plaintiff was born in 1961 and was 56 years old at the time of the ALJ's decision. Administrative Record ("AR") at 184. He completed high school in Vietnam in 1976. *Id.* at 77, 189. Prior to his alleged onset date he worked in electronics assembly, manufacturing and as a bank teller. *Id.* Plaintiff testified at the December 19, 2017 hearing that he was working part time as a material handler for an electronics company and had been working there "almost a year[]" at that point. *Id*. at 78.

#### 2. Medical History

The administrative record contains treatment notes from Plaintiff's medical providers for the period August 12, 2015 through February 8, 2016. These treatment notes reflect that on August 12, 2015, Plaintiff was admitted to the Emergency Room at the Regional Medical Center of San Jose for abdominal pain; surgery the next day revealed a perforated bowel and Stage III colon cancer. *Id.* at 254. Plaintiff's attending physician was Dr. Hirai, who continued to see Plaintiff following his surgery. *Id.* While in the hospital, Plaintiff was seen by Dr. Raymond Lee, who found that "aggressive chemotherapy [was] needed." *Id*. at 269. After two weeks in the hospital, Plaintiff was discharged to a skilled nursing facility. *Id*. He began to receive chemotherapy from Dr. Lee on September 23, 2015. *Id.* at 357. Plaintiff continued to receive chemotherapy from Dr. Lee throughout the fall, and on February 8, 2016 Plaintiff received his 10th chemotherapy treatment from him. *Id.* at 368-369. Although the February 8, 2016 treatment note is the most recent treatment note in the record, it appears that this was not Plaintiff's last chemotherapy treatment. The February 8, 2016 treatment note stated that Plaintiff was to return in two weeks for another treatment and an undated note from Dr. Lee that seems to have been written at the same time states that Plaintiff would be finished with chemotherapy by March 23, 2016. *Id.* at 370. In that note, Dr. Lee stated that Plaintiff would be disabled until April 15, 2016. *Id*.

There are no records from treatment providers that cover the period after February 8, 2016. In his April 27, 2016 appeal of the Commissioner's denial of his request for reconsideration,

Plaintiff wrote that the reason for his appeal was that his colon cancer had gotten worse and he was scheduled for surgery in May 2016. *Id*. at 129. At the hearing, Plaintiff testified that he had a second colon surgery on June 15, 2016. *Id*. at 87.

### B. The Administrative Hearing

At the administrative hearing, Plaintiff was not represented by counsel. *Id.* at 75-76. Plaintiff explained to the ALJ that although she had continued the hearing to allow him to find an attorney or representative he had been unable to find anyone to represent him. *Id.* Plaintiff was assisted at the hearing by a Vietnamese interpreter but testified that he spoke "a little bit" of English. *Id.* at 72. In addition to taking testimony from Plaintiff, the ALJ heard testimony from a medical expert ("ME"), Dr. Vu, and a vocational expert ("VE"), Ronald Morrell. *Id.* at 71.

In response to the ALJ's questions, Plaintiff described his education and work history. *Id.* at 75-77. He testified that he had a wife and 13-year-old son who live in Vietnam. *Id.* He testified that he was currently working as a material handler for Flat Electronics, where he worked 6-8 hours a day "most of the time" and between 32 and 40 hours a week. *Id.* at 78.

Next, the ALJ took testimony from Dr. Vu, who testified that he is board certified in internal medicine and in pulmonary disease. *Id.* at 80. Dr. Vu testified that he had "read the record sufficiently to provide an opinion in claimant's case" but before testifying he posed the following question to Plaintiff: "Mr. [L.], has there been any relapse of the cancer?" *Id*. at 80. In response, Plaintiff stated: "Yes. I know the cancer. I understand when they say cancer is in me -- in my -- I understand that." *Id.* At that point, the ALJ intervened, asking Plaintiff: "So, the question the doctor is asking you is whether or not you are in remission." *Id.* Plaintiff responded, "Remission? Yeah. The cancer is in there all the time and they never disappear." *Id*. Neither the ALJ nor the ME asked for clarification of Plaintiff's response[3] and Dr. Vu appears to have interpreted Plaintiff's response as confirming that Plaintiff's cancer was in remission. Thus, he testified that Plaintiff had "recovered" from his cancer. *Id.* at 81; *see also id.* (citing Dr. Lee's note stating that Plaintiff would be disabled until April 2016 and testifying further that there was

---

[3] Although an interpreter was present at the hearing, there is no indication that he translated the questions posed by the ME and the ALJ; nor does it appear that he translated Plaintiff's response.

3

"no indication in the file that there has been relapse of the problem, or recurring of the cancer"); ("he was known to have the cancer on August 12, 2015, and the problem resolved . . . by April 2016."); 83 ("they took out the cancer. And there's no recurrence."). Based on his understanding that Plaintiff had recovered by April 2016 -- which was less than a year after his cancer was first diagnosed -- Dr. Vu went on to opine that Plaintiff did not meet the 12-month duration requirement to establish disability. *Id*. at 82. He testified further that Plaintiff did not meet a listing for disability because, among other things, there had been no recurrence of his cancer. *Id.* at 83. Finally, Dr. Vu offered testimony about Plaintiff's physical limitations. *Id.* at 85.

Next, the ALJ asked Plaintiff if he had seen a doctor recently. *Id.* at 85. He responded that he had seen "Dr. Wee"[4] and that he was scheduled to see him again on January 8, 2018. *Id*. When the ALJ asked why Plaintiff was scheduled to see Dr. Lee, Plaintiff offered the following testimony:

> And did note the tumor is still growing and still developing. Dr. [Lee] is colonoscopy, so he run the tubing after I surgery last year is come out with four bullet [phonetic] in my tubing here. And then second time is come up with 13 of them. And then he ask me to go back for one more time to see what happened, but I don't have any information.

*Id.* at 85.[5] The ALJ did not ask for clarification of this response. Rather, she asked Plaintiff to confirm that "the cancer was removed" in August 2015, when his first surgery was performed. *Id.* at 85. Plaintiff said, "yeah, after I surgery, what I remember now is all the paperwork that I sent to the lawyer office that say colon cancer stage 3[ ]." *Id.* at 86. He testified, "[a]nd then go to chemo," to which the ALJ responded: "And so you went to chemo. And the cancer was removed from your body." *Id.* Plaintiff did not respond to that statement, going on to describe his second colon surgery, again with Dr. Hirai. *Id.* at 87.

In describing his second surgery, Plaintiff testified that the surgery was conducted at "O'Connor Hospital," where he stayed for 10 days. *Id.* He testified further that he was then discharged back to the nursing home "and then release me." *Id.* Plaintiff did not offer any

---

[4] Based on the testimony Plaintiff offered, it is likely that he was referring to his treating physician, Dr. Lee.
[5] Again, it appears that the Vietnamese interpreter was not assisting Plaintiff with translation when Plaintiff offered this response to the ALJ's question.

testimony as to how long he was in the nursing home before he was released but testified that he asked to be released.   *Id*.   He told the ALJ he asked to be released because he didn't "feel right to live there" and also because he wanted to go back to his country to see his son "in case something happen to myself." *Id.*  After he was released, Plaintiff went to Vietnam to visit his family. *Id.* Plaintiff did not offer any testimony regarding the timing of his trip, its duration or his activities while in Vietnam.

Next, the ALJ asked Plaintiff if he was "now working." *Id.* at 87.  Plaintiff answered that he was and the ALJ stated, "[a]nd if you're working that means you are not disabled." *Id.* She did not ask him what work he performed, the physical demands of the job, or whether he received any accommodations.  She also made no attempt to determine when he returned to work.  Next, the ALJ asked Plaintiff if he was taking any medications, whether he had health insurance, if he smoked, drank or used "street drugs" or had been arrested. *Id.* at 88-89.  Plaintiff testified that he was taking medication, including medication to "get recover from chemotherapy" but he could not remember the names of them. *Id.* at 88.  The ALJ did not ask Plaintiff if he experienced any side-effects from his medications; nor did she ask him why he was taking medication for chemotherapy almost two years after the last treatment records in the administrative record indicated his chemotherapy had ended.  Finally, the ALJ took testimony from a vocational expert, who offered testimony about Plaintiff's past work and addressed various hypotheticals posed by the ALJ. *Id.* at 89-94.

At the conclusion of the hearing, the ALJ did not instruct Plaintiff to provide updated medical records; nor did she keep the record open to allow Plaintiff to do so.  Instead, she told him that she would review the record and issue a decision in 45-60 days, again informing him that "one of the problems of issuing a decision in your favor is that you're currently working, and if you're working that means you're not disabled." *Id.* at 95.

**C.    Five-Step Framework**

Disability insurance benefits are available under the Social Security Act (the "Act") when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to

5

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 423(a)(1). A claimant is only found disabled if his physical or mental impairments are of such severity that he is not only unable to do his previous work but also "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a sequential, five-part evaluation process to determine whether a claimant is disabled under the Act. *See Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Id.* "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.*

At step one, the ALJ considers whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in such activity, the ALJ determines that the claimant is not disabled, and the evaluation process stops. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ continues to step two. *See id.*

At step two, the ALJ considers whether the claimant has "a severe medically determinable physical or mental impairment" or combination of such impairments that meets the regulations' twelve-month durational requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). An impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, disability benefits are denied. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that one or more impairments are severe, the ALJ proceeds to the next step. *See id.*

At step three, the ALJ compares the medical severity of the claimant's impairments to a list of impairments that the Commissioner has determined are disabling ("Listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If one or a combination of the claimant's impairments meets or equals the severity of a listed impairment, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, the analysis continues. *See id.*

At step four, the ALJ must assess the claimant's Residual Function Capacity ("RFC"). An

6

1  RFC is "the most [a claimant] can still do despite [that claimant's] limitations ... based on all the
2  relevant evidence in [that claimant's] case record." 20 C.F.R. § 404.1545(a)(1).  The ALJ then
3  determines whether, given the claimant's RFC, the claimant would be able to perform his past
4  relevant work.  20 C.F.R. § 404.1520(a)(4).  Past relevant work is "work that [a claimant] has
5  done within the past fifteen years, that was substantial gainful activity, and that lasted long enough
6  for [the claimant] to learn how to do it."  20 C.F.R. § 404.1560(b)(1).  If the claimant is able to
7  perform his past relevant work, then the ALJ finds that he is not disabled.  If the claimant is unable
8  to perform his past relevant work, then the ALJ proceeds to step five.

9  At step five, the Commissioner has the burden to "identify specific jobs existing in
10 substantial numbers in the national economy that the claimant can perform despite [the claimant's]
11 identified limitations."  *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (quoting *Johnson v.
12 Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)).  If the Commissioner meets this burden, the
13 claimant is not disabled.  *See* 20 C.F.R. § 404.1520(f).  Conversely, the claimant is disabled and
14 entitled to benefits if there are not a significant number of jobs available in the national economy
15 that the claimant can perform.  *Id.*

### D. The ALJ's Decision

17 At step one, the ALJ determined that Plaintiff worked after his application date, but the
18 work activity did not rise to substantial gainful activity.  *Id.* at 20.  At step two, the ALJ found
19 that Plaintiff had a severe impairment of stage III colon cancer.  *Id.* at 20-21.  At step three, the
20 ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed
21 impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listings").   At step four, the ALJ
22 assessed that Plaintiff had the RFC to perform medium work with the following additional
23 limitations: lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk for six hours in
24 an eight-hour workday; no limitation for sitting capacity; frequently could climb stairs and ramps,
25 but occasionally climb ladders, ropes, or scaffolds, and occasionally be exposed to unprotected
26 heights and dangerous machinery; and could sustain frequent exposure to heat and cold.  *Id.* at 21.
27 At step five, the ALJ determined that Plaintiff could perform his past relevant work as a materials
28 hander, electronics assembler, and electronics utility worker and therefore concluded that Plaintiff

7

was not disabled from Plaintiff's application date of August 2015 through the date of the ALJ's decision, on March 29, 2018. *Id.*at 25-26.

### E. Issues for Review

Did the ALJ fail to discharge her duty to conduct an "appropriate" inquiry by failing to develop the record and specifically:

- Did she fail to take adequate measures to obtain updated medical records reflecting Plaintiff's medical condition after the last treatment note of Dr. Lee on February 8, 2016 to clarify, *inter alia*, when – or if –Plaintiff recovered from his colon cancer, whether the cancer had recurred and if he was in remission at the time of the hearing?

- Did she fail to discharge her duty because she did not ask Plaintiff at the hearing to describe: 1) his current work, including when his job began and any special accommodations he may have been receiving; 2) the timing of his release from the nursing home after his second surgery, when he went to Vietnam, and the nature of his trip; 3) his daily activities and his physical limitations generally; and 4) whether he had any side-effects from his medications and why he was apparently taking a medication to ameliorate the effects of chemotherapy when his chemotherapy had ostensibly ended almost two years before?

## III. ANALYSIS

### A. Legal Standards

It is Plaintiff's burden to prove disability by providing the requisite evidence. *See* 42 U.S.C. § 423(d)(5)(A) (claimant must furnish medical and other evidence of his disability); 20 C.F.R. § 416.912(a) ("[Y]ou have to prove to us that you are … disabled…. You must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)."). Nonetheless, "[i]n Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)(citation omitted). While this duty extends to both represented and unrepresented claimants, the Ninth Circuit has cautioned that "[w]hen the

claimant is unrepresented . . . the ALJ must be especially diligent in exploring for all the relevant facts." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Id*. (internal quotation marks and citations omitted). The ALJ can satisfy this duty in a variety of ways, including "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id*. (citations omitted).

### B. Whether the ALJ Erred by Failing to Develop the Record

The ALJ's failure to fulfill her obligation to develop the record in this case is glaring. Both the ALJ and Dr. Vu (whose opinions were given significant weight by the ALJ) relied on an undated note by Dr. Lee, apparently written in February 2016, stating that Plaintiff's last chemotherapy would be on March 23, 2016 and that he would be disabled until April 15, 2016 in support of their conclusion that Plaintiff had fully recovered from his colon cancer by that date. *See* AR 370. Yet the ALJ made no attempt to obtain medical records after the February 2016 appointment with Dr. Lee to determine whether Plaintiff had, in fact, recovered by April 15, 2016. This omission is particularly troubling given that Plaintiff wrote in his April 27, 2016 appeal that his cancer had gotten worse and noted that further surgery was scheduled. Indeed, the ALJ seemed to accept Plaintiff's testimony that he had another operation for his colon cancer in June 2016 but did not seek to obtain medical records that would shed light on why the surgery was needed or how it could be reconciled with Dr. Vu's conclusion that Plaintiff had fully recovered from his cancer two months before.

Nor did the ALJ attempt to resolve the ambiguity arising as a result of Dr. Vu's conclusion that there had been no recurrence of Plaintiff's colon cancer and Plaintiff's apparently conflicting testimony at the hearing that "[t]he cancer is in there all the time and they never disappear." Likewise, the ALJ did not seek clarification of Plaintiff's testimony that he was continuing to see Dr. Lee because Dr. Lee had told him the "tumor [was] still growing." The need for medical records to clarify whether Plaintiff had recovered from his colon cancer, when he went into

9

remission (if he did) and if Plaintiff continued to experience recurrences of the cancer was especially pressing because of the obvious confusion resulting from Plaintiff's limited understanding of and facility with English, which did not seem to be alleviated by the presence of an interpreter at the hearing.

Further, to the extent that the duration of Plaintiff's impairment due to colon cancer was a key issue, the ALJ fell short by failing to determine how long Plaintiff was in the nursing home after his second surgery and when he traveled to Vietnam, apparently assuming in her decision that Plaintiff travelled to Vietnam less than a year after his first surgery and that this justified discounting the possibility that Plaintiff had not, in fact, recovered from his cancer when his chemotherapy was scheduled to end in March 2016.

Finally, the Court notes that the ALJ failed to seek testimony from Plaintiff at the hearing on a host of questions related to Plaintiff's ability to work, including his daily activities, any accommodations he may have received while working, his physical limitations and possible side effects from medications. She did not follow up in any way on Plaintiff's vague testimony about a medication (the name of which he could not recall) that he said he was taking in connection with chemotherapy even though it seemed to conflict with Dr. Vu's testimony that Plaintiff had recovered from his cancer almost two years before the hearing.[6]

For these reasons, the Court finds that the ALJ did not satisfy her duty to conduct an adequate inquiry and that the case must be remanded for further development of the record, which should include, at a minimum, obtaining updated medical records for the period starting after February 8, 2016.

---

[6] At the hearing, the ALJ told Plaintiff (twice) that because he was working, he was not disabled under the regulations of the Social Security Administration. The Court presumes that she was referring to the regulation providing that if a claimant is "working and the work [the claimant is] doing is substantial gainful activity, [the SSA] will find that [the claimant is] not disabled regardless of [the claimant's] medical condition or [their] age, education, and work experience." 20 C.F.R. § 404.1520(b). Perhaps because of that rule, the ALJ believed at the hearing that it was not necessary to address these questions. Having determined in her decision, however, that Plaintiff was *not* substantially gainfully employed, the ALJ had a duty to develop the record as to the subsequent steps of the five-step inquiry.

**IV. CONCLUSION**

For the reasons stated above, the Court GRANTS Plaintiff's Motion for Summary Judgment, DENIES Defendant's Motion for Summary Judgment, reverses the decision of the Commissioner and remands for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: September 23, 2020

_____
JOSEPH C. SPERO
Chief Magistrate Judge